THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAN PHU CUONG INVESTMENT LLC, a Washington Limited Liability Company, and EMILIYA SHUPARSKAYA, a married woman as her separate property, <br><br> Plaintiffs, <br><br> v. <br><br> KING COUNTY, a political subdivision of the State of Washington, <br><br> Defendant. | CASE NO. C18-1102-JCC <br><br> ORDER |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 40). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and REMANDS Plaintiffs' state law claims for the reasons explained herein.

I.  **BACKGROUND**

This case arises out of Plaintiffs' purchase of lots of land located in Lake Geneva Park Plats Nos. 3 and 4 in Federal Way, Washington. (*See* Dkt. Nos. 40 at 2, 41-6 at 2, 69 at 2–3.)[1] In

---

[1] Defendant has submitted a map of the relevant area showing Plaintiff Shuparskaya's lot outlined in red and Plaintiff Tan Phu Cuong Investment LLC's lots outlined in blue. (*See* Dkt. Nos. 40 at 2 n.1, 41-6 at 2.)

the spring of 2015, Plaintiff Emiliya Shuparskaya purchased a lot (403120-0010) in Plat No. 4 for $15,000—$20,000 below the asking price. (Dkt. Nos. 41-6 at 2, 41-8 at 3–4, 65 at 2, 69 at 2.) In August 2015 and July 2016, Plaintiff Cuong LLC[2] purchased nine lots in Plat No. 3 (403110-0330, 403110-0340, 403110-0460, 403110-0470, 403110-0480, 403110-0550, 403110-0560, 403110-0570, and 403110-0580). (Dkt. Nos. 41-6 at 2, 67 at 2.) Plaintiff Cuong LLC paid $36,000 or $40,000 in total for Lots 46, 47, and 48, and paid $200,000 in total for Lots 33, 34, 55, 56, 57, and 58. (Dkt. No. 41-9 at 15.) Plaintiff Cuong LLC has since sold Lots 55, 56, and 57. (*See* Dkt. No. 67 at 2.)

**A. Plat Nos. 3 and 4**

Plat Nos. 3 and 4 slope from north to south with the low point located at the boundary between the plats, causing water to naturally flow south toward Plaintiff Shuparskaya's Lot 01 and Plaintiff Cuong LLC's Lot 58. (Dkt. Nos. 45 at 2–3, 53 at 7–10.) The plats' natural drainage channel is a shallow open ditch or swale along the plats' north-south boundary. (Dkt. Nos. 45 at 4–5, 34, 36; 53 at 9–10.) Prior to development, water flowed across private parcels. (Dkt. No. 53 at 9.) Around 1939, a culvert was built to allow water flowing north-to-south to go under a street and continue its natural drainage path. (Dkt. No. 53 at 4, 7–10, 64; *see* Dkt. No. 45 at 3–4.)

Many lots in the plats are underpinned by "hardpan" that sits close to the ground's surface and restricts the downward flow of water, which causes percolation issues and generally precludes having a septic system safely installed on individual lots. (*See* Dkt. Nos. 44 at 2, 48 at 2–4, 49 at 1–2.) The King County Assessor's Office has historically categorized Plaintiffs' lots as "non-buildable parcels" and assigned them low appraisal values. (Dkt. No. 43 at 3–4.)[3] In 2003, prior to Plaintiffs' purchase of their lots, the City of Federal Way designated Plaintiff

---

[2] Giang "John" Vo is the sole partner and manager of Plaintiff Cuong LLC. (*See* Dkt. Nos. 40 at 2, 67 at 2.) For clarity, actions attributable to either Vo or Plaintiff Cuong LLC will be attributed to solely Plaintiff Cuong LLC.

[3] Plaintiffs have not challenged the valuations of their lots or the Assessor's Office's finding that the lots are unbuildable. (*See* Dkt. No. 43 at 4.)

Shuparskaya's Lot 01 and Plaintiff Cuong LLC's Lot 58 "as containing wetlands." (*Id.* at 2.)

Plat Nos. 3 and 4 were privately developed, and Plat No. 3's developer reserved the right to allow surface water to flow west to the drainage channel on the western border of the plat. (*See* Dkt. Nos. 40 at 4; 41-6 at 2; 45 at 32; 53 at 9, 66.) A storm drainage system, including a north-south concrete drainage pipe (the "main line"), was installed on the plats to collect and convey runoff to the drainage ditch. (*See* Dkt. Nos. 40 at 4; 45 at 3–4; 53 at 8, 70; 71 at 4.) The main line sits close to the ground's surface and is vulnerable to damage caused by heavy items driving over or falling onto it. (Dkt. No. 46 at 4.) Beginning in 1972, Defendant obtained several drainage easements to allow it to make necessary repairs to the main line. (Dkt. No. 53 at 7–8, 44–62.) The easements referenced drainage issues on several lots that would be alleviated. (*See* Dkt. No. 66 at 4–5, 184–192.) Since obtaining the easements, Defendant has performed general maintenance on the drainage system and responded to specific issues on three occasions. (*See* Dkt. Nos. 46 at 3; 53 at 10; 64 at 17–18; 68 at 59, 69, 74; 69 at 57.)

**B. Plaintiff Shuparskaya**

Plaintiff Shuparskaya purchased Lot 01 as a vacant lot intending to build a house on the land. (*See* Dkt. No. 41-8 at 4.) Plaintiff Shuparskaya walked Lot 01 to inspect it but did not have an inspection done prior to purchasing it. (*Id.* at 5–6.; Dkt. No. 65 at 4.) Plaintiff Shuparskaya obtained a clearing permit, and in the summer of 2015 she cleared leaves and foliage from Lot 01. (*See* Dkt. Nos. 41-8 at 9–11, 53 at 35–36.) Plaintiff Shuparskaya was aware of Defendant's easement for the main line but did not see the main line itself before Lot 01 was cleared. (*See* Dkt. No. 41-8 at 6.) In the winter of 2015, after clearing Lot 01, Plaintiff Shuparskaya noticed flooding on the land when it rained and found water flowing from the main line. (*Id.* at 13.) Plaintiff Shuparskaya asked various employees of Defendant for assistance but did not receive substantive help. (*See* Dkt. No. 65 at 5–6.)

In the summer or fall of 2016, Plaintiff Shuparskaya hired a contractor from Craigslist known as "Vasily," who connected two pipes to the main line: one in the northwest corner of Lot

01 and one running from north to south and terminating in the culvert. (*See* Dkt. Nos. 40 at 6; 41-8 at 11, 14–16, 31–32; 53 at 2–7, 14, 16, 18, 31, 40; 65 at 6.)[4] Vasily's work created a "tight line" that caused water that would have flowed off Plaintiffs' lots to instead pool on their property. (*See* Dkt. Nos. 45 at 5–6, 53 at 4.) Plaintiff Shuparskaya later sought a grading permit for Lot 01 from Defendant. (*See* Dkt. Nos. 41-8 at 10, 33; 65 at 2.) Although Plaintiff Shuparskaya did not obtain the permit, Defendant's employees gave her 10 trucks' worth of fill dirt for free. (*See* Dkt. No. 65 at 6, 8.)[5] Following complaints from her neighbors about the dirt, an employee of Defendant told Plaintiff Shuparskaya that she needed a permit. (*See* Dkt. Nos. 49 at 2; 65 at 8, 72–73.) When Plaintiff Shuparskaya attempted to obtain a permit, she was told that Lot 01 contained a wetland and was directed to remove the dirt. (*Id*. at 8–9; Dkt. No. 41-8 at 27.) In December 2018, a wetland reconnaissance on Lot 01 identified and delineated a wetland through the eastern half of the lot. (Dkt. No. 50 at 3.) Plaintiff Shuparskaya has not removed the dirt, sought a reasonable use exception, or performed a wetlands analysis on Lot 01. (*See* Dkt. Nos. 41-8 at 22–25, 51 at 3.) Instead, she has filed a tort claim for damages against Defendant relating to Lot 01's water issues. (*See* Dkt. No. 65 at 10, 76–81.)

**C. Plaintiff Cuong LLC**

Plaintiff Cuong LLC's Lots 33, 34, 46, 47, and 48 have faced issues with their suitability for septic tank installation. (*See* Dkt. Nos. 41-2 at 2, 41-3 at 2, 41-9 at 37–40.) Plaintiff Cuong LLC's requests for septic permits have been denied, and Plaintiff Cuong LLC has filed two pending Land Use Petition Act appeals challenging the denials in Snohomish County Superior Court. (*See* Dkt. Nos. 40 at 9, 41 at 2, 41-7, 51 at 2.)

---

[4] Plaintiff Shuparskaya did not check if Vasily possessed a business license, and she paid cash for his services. (*See* Dkt. No. 41-8 at 16.) She was also unaware of the culvert when Vasily performed his work and does not know whether he inserted the second pipe into it. (*See id*. at 17–19.)

[5] Plaintiff Shuparskaya asserts that Defendant's employees argued amongst one another about whether Lot 01 contained a wetland and that their computer did not show a wetland on Lot 01. (*See* Dkt. No. 65 at 6.)

Plaintiff Cuong LLC's Lot 58 has proven difficult to develop. In 2014, a wetland delineation concluded that Lot 58 "likely contained a wetland." (Dkt. No. 50 at 2.) In November 2016, around the time Plaintiff Cuong LLC purchased its lots, Robert King inspected the lots on Plaintiff Cuong LLC's behalf and determined that Lot 58 was encumbered by a wetland and was likely unbuildable. (*See* Dkt. No. 47 at 2.) Plaintiff Cuong LLC applied for a single-family residence building permit for Lot 58 and a subsequent environmental review conducted by Defendant concluded that both Lot 58 and Plaintiff Shuparskaya's Lot 01 were encumbered by a wetland and its buffer. (*See* Dkt. No. 42 at 2–3, 6.) To satisfy its obligation under the King County Code to perform a wetland study, Plaintiff Cuong LLC filed a hydrology report prepared by Stephen Neugebauer, which concluded that none of Plaintiff Cuong LLC's lots contained wetlands. (*See* Dkt. Nos. 40 at 10, 42 at 3–4, 51 at 4.) Defendant rejected Neugebauer's report for failing to comply with applicable provisions of the King County Code and Washington law. (*See* Dkt. No. 42 at 5–6.) Plaintiff Cuong LLC did not apply for a reasonable use exception or continue in the building permit application process; instead, it notified Defendant of its intent to file suit. (*See* Dkt. Nos. 40 at 10, 41-9 at 24, 41-5 at 2, 42-3 at 2–3, 51 at 4–5.) During a site inspection conducted in December 2018, Defendant discovered a septic test pit that was surveyed and mapped by a surveyor retained by Plaintiff Cuong LLC. (*See* Dkt. Nos. 41-9 at 22–23; 45 at 4–5; 53 at 7, 40, 42.) The septic test pit significantly damaged the main line and could have interfered with the functionality of the drainage ditch and culvert. (*See* Dkt. Nos. 41-9 at 22–23; 45 at 4–5; 53 at 7, 40, 42.)

**D. Procedural History**

On July 6, 2018, Plaintiffs filed suit in Snohomish County Superior Court alleging numerous violations of Washington and federal law. (*See* Dkt. No. 1-3 at 5–10.) In addition to monetary damages, Plaintiffs seek declaratory relief regarding Defendant's alleged violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*., and injunctive relief. (*Id.* at 11–12.) Defendant removed the case to pursuant to 28 U.S.C. § 1441(c), (*see* Dkt. No. 1), and now

moves for summary judgment on Plaintiffs' claims, (*see* Dkt. No. 40).

## II. DISCUSSION

### A. Summary Judgment Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Plaintiffs' Federal Claims

#### 1. Inverse Condemnation

Plaintiffs assert that Defendant has inversely condemned their property in violation of the Washington and federal constitutions. (*See* Dkt. No. 1-3 at 9.) Plaintiffs claim that Defendant has "effectively appropriated the lots . . . as a water storage facility, or in the alternative, [Defendant] deems the water storage facility a wetland and [Defendant] has created it." (*See id*. at 3.)

"No private property shall be taken or damaged for public or private use without just compensation having been first made." Wash. Const. art. I, § 16; *see* U.S. Const. amends. V,

XIV. "Inverse condemnation" describes "an action alleging a governmental 'taking,' brought to recover the value of property which has been appropriated in fact, but with no formal exercise of the power of eminent domain." *Phillips v. King County*, 968 P.2d 871, 876 (Wash. 1998) (quoting *Lambier v. City of Kennewick*, 783 P.2d 596, 598 (Wash. Ct. App. 1989)). A county may be liable for damages under a taking theory if it causes surface water to trespass across a plaintiff's land in quantities greater than or different from the natural flow thereof. *See Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 523 P.2d 186, 189 (Wash. 1974); *King County v. Boeing Co.*, 384 P.2d 122, 126 (Wash. 1963) (collecting cases); *Hoover v. Pierce County*, 903 P.2d 464, 468–69 (Wash. Ct. App. 1995).

"A party alleging inverse condemnation must establish the following elements: (1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings." *Phillips*, 968 P.2d at 876. The measure of damages in a taking case is the diminution in the property's fair market value caused by the taking. *Id*. The right to damages for property is personal to the owner and does not pass to a subsequent purchaser unless expressly conveyed by the seller; therefore, "a new taking cause of action requires additional governmental action causing a measurable decline in market value." *Hoover*, 903 P.2d at 470 (collecting cases). Thus, a purchaser should not be awarded taking damages if he or she "acquired property for a price commensurate with its diminished value" absent additional governmental action that further diminishes the property's value. *See id*. at 469.

Defendant has offered evidence demonstrating that the Plaintiffs' asserted bases for their inverse condemnation claim predated their purchase of the lots and that Plaintiffs purchased the lots for prices commensurate with the lots' diminished value. Plaintiffs' lots have historically been categorized as non-buildable parcels due to issues with poor percolation, standing water, and unsuitability for septic systems. The lots have, accordingly, been assigned low appraisal values. (*See* Dkt. Nos. 41-9 at 34–44; 43 at 3–4, 7–14; 44 at 2–3; 48 at 2–4; 49 at 2.) These

ORDER
C18-1102-JCC
PAGE - 7

issues substantially predated Plaintiffs' purchase of the lots. (*See, e.g.*, Dkt. No. 49 at 2) (neighbor declaring that, "There has been standing water on the Shuparskaya property since I first moved in 22 years ago."). Multiple studies conducted prior to Plaintiffs' purchase of the lots concluded that Plaintiff Shuparskaya's Lot 01 and Plaintiff Cuong LLC's Lot 58 are encumbered by wetlands. (*See* Dkt. Nos. 43 at 2, 50 at 2.) These studies were corroborated by King's investigation, conducted shortly after Plaintiffs' purchase of their land. (*See* Dkt. No. 47 at 2.) The purchase prices of Plaintiffs' lots were commensurate with their low appraisal values and obstacles to development, (*see* Dkt. Nos. 41-8 at 3–4, 41-9 at 15, 65 at 2), and the record does not show that the sellers of the lots expressly conveyed any preexisting right to takings damages to Plaintiffs. Moreover, many of the events that have caused or have had the potential to increase the lots' water issues since Plaintiffs' purchase are attributable to Plaintiffs, not Defendant. (*See* Dkt. Nos. 44 at 4; 45 at 5–6; 53 at 4, 7, 40.)

In response, Plaintiffs assert that Defendant has committed acts amounting to inverse condemnation after Plaintiffs purchased their lots. (*See* Dkt. No. 69 at 20–21.) Plaintiffs rely on their perceptions of the lots' suitability for development and argue that Defendant began describing the area as a wetland only after Plaintiffs purchased their lots. (*See id.*; *see also* Dkt. Nos. 65 at 3–4, 67 at 3–10.) Plaintiffs' perceptions regarding the suitability of the lots for development at the time of purchase are insufficient to overcome Defendant's evidence that obstacles to development, including percolation issues, standing water, the presence of wetlands, and unsuitability for septic system installation, predated Plaintiffs' purchase. (*See* Dkt. Nos. 41-9 at 34–44; 43 at 2–4, 7–14; 44 at 2–3; 48 at 2–4; 49 at 2; 50 at 2.) Similarly, Plaintiffs' professed lack of knowledge about the presence of wetlands does not contravene Defendant's evidence that one in fact existed on the lots prior to Plaintiffs' purchase. (*See* Dkt. Nos. 43 at 2, 50 at 2; *see also* Dkt. No. 47 at 2.)

In addition, Plaintiffs have not established that Defendant's identification of a preexisting wetland on the lots and requirement that Plaintiffs obtain necessary permits or reasonable use

variances prior to development caused a new inverse condemnation cause of action to accrue to Plaintiffs. *See Hoover*, 903 P.2d at 470; (Dkt. No. 69 at 21). And although Plaintiffs argue that they have been precluded from developing their property due to Defendant's identification of wetlands encumbering their property, (*see* Dkt. No. 69 at 21), that is not the measure of damages in a takings case. Rather, Plaintiffs must offer evidence showing that the fair market value of their property has been diminished by an affirmative action of Defendant taken after Plaintiffs purchased the lots. *See Phillips*, 968 P.2d at 876; *Hoover*, 903 P.2d at 469–70. Plaintiffs have not cited such evidence or evidence showing that a seller of the lots expressly conveyed a right to recover for a prior taking to Plaintiffs. (*See generally* Dkt. Nos. 66, 69.)

Therefore, Defendant's motion for summary judgment is GRANTED as to Plaintiffs' inverse condemnation claims arising under the Washington and federal constitutions.

2. Declaratory Relief under the CWA

The CWA regulates the discharge of pollutants into waters of the United States and regulates quality standards for surface waters. 33 U.S.C. §§ 1251 *et seq*. The CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States unless the discharger holds a permit issued under the terms of the National Pollutant Discharge Elimination System ("NPDES"). *See* 33 U.S.C. §§ 1311(a), 1342, 1362(14). NDPES permits may be issued by the Environmental Protection Agency ("EPA") or a state authorized by the EPA to act as a permitting authority. *See* 33 U.S.C. § 1342(a)–(b). In Washington, the EPA has delegated the authority to issue NDPES permits to the Washington State Department of Ecology. *See* Wash. Rev. Code § 90.48.260(1). Defendant's "Phase I Permit," at issue in this litigation, was issued by the Washington Department of Ecology pursuant to Wash. Rev. Code § 90.48. (*See* Dkt. Nos. 52 at 2–4, 70 at 3); *see also Snohomish County v. Pollution Control Hearings Bd.*, 386 P.3d 1064, 1067–68 (Wash. 2016) (discussing history and requirements of Phase I Permit).

A private citizen may bring an action to enforce the provisions of the CWA, commonly known as a "citizen suit." *See* 33 U.S.C. § 1365(a). "However, before [a citizen suit] is

commenced, the citizen must give a 60-day notice of intent to sue . . . . In fact, absent that notice, the action is prohibited." *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009) (citing 33 U.S.C. § 1365(b)(1)(A)). "[T]he notice must be given not only to the alleged violator, but also to the Administrator [of the EPA], and to the State where the alleged violation occurred." *Id*. (footnotes omitted) (citing 33 U.S.C. §§ 1365(b)(1)(A)(i)–(iii)). "In [the Ninth Circuit], compliance with this notice provision is required for jurisdiction." *Waterkeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 916 (9th Cir. 2004) (citing *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000)). The EPA has promulgated regulations governing the contents of the notice required for citizen suits, which "are not to be looked upon as mere technicalities to be accepted with cold reserve and embraced with velleity. They are to be taken serious as a means of carrying out important public policies. [The Ninth Circuit's] deviations from their precise language have been minor." *Ctr. for Biological Diversity*, 566 F.3d at 802 (citing 40 C.F.R. § 135.3).

In their complaint, Plaintiffs assert that Defendant has violated its "general storm water permit" and thus is in violation of the CWA. (*See* Dkt. No. 1-3 at 10.) Plaintiffs argue that Defendant "should be ordered to bring its storm water system up to compliance with its storm water permit and to maintain and improve its system consistent with the storm water permit and current storm water and surface water regulations." (*Id.*) It is undisputed that Plaintiffs did not provide Defendant, the Administrator of the EPA, or the State of Washington with the requisite notice prior to filing suit against Defendant for alleged violations of the CWA. 33 U.S.C. § 1365(b)(1)(A)(i)–(iii); *(see* Dkt. Nos. 40 at 13, 69 at 6–9). Thus, the Court lacks jurisdiction over Plaintiffs' claims arising under the CWA. *See Waterkeepers N. Cal.*, 375 F.3d at 916. Therefore, Plaintiffs' requests for declaratory relief regarding Defendant's alleged violations of the CWA and for an order directing Defendant to comply with its NDPES permit are DISMISSED.

//

**C.   Supplemental Jurisdiction**

District courts have original jurisdiction over "actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1441(b). A claim may "arise under" federal law if a state law claim necessarily raises a substantial federal issue. *See Gunn v. Minton*, 568 U.S. 251, 257–58 (2013). But "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 (1986); *see also Mays v. City of Flint*, 324 F. Supp. 3d 918, 925 (E.D. Mich. 2016), *aff'd sub nom. Mays v. City of Flint, Mich.*, 871 F.3d 437 (6th Cir. 2017) ("Even if Plaintiffs sought to demonstrate that Defendants were negligent because they failed to comply with the SDA or its regulations, this does not raise a substantial federal question.").

"The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion." *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007) (citing 28 U.S.C. 1367(c)(3); *Fang v. United States*, 140 F.3d 1243–44 (9th Cir. 1998)). While not mandatory, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Plaintiffs' claim for continuing negligence cites two federal laws: the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300f–300j-27, and the CWA. (*See* Dkt. No. 1-3 at 6.) Plaintiffs cite those federal statutes as evidence of Defendant's alleged breach of a duty owed to Plaintiffs under their state law negligence theory. (*See* Dkt. No. 69 at 6–7) (citing Wash. Rev. Code § 5.40.050; *Mathis v. Ammons*, 928 P.2d 431, 435 (Wash. Ct. App. 1996)).[6] Plaintiffs'

---

[6] In their response to Defendant's motion for summary judgment, Plaintiffs agree that they have not provided the requisite notice to bring a citizen suit under the CWA but argue that they may look to the statute as evidence of Defendant's breach of a duty. (*See* Dkt. No. 69 at 6–

citations to the SDWA and CWA as establishing duties for the purposes of their state law continuing negligence claim are insufficient to raise substantial federal questions and thus are not subject to the Court's original jurisdiction. *See Merrell Dow Pharm. Inc.*, 478 U.S. at 814; *Mays*, 324 F. Supp. 3d at 925. Plaintiffs' remaining claims for continuing trespass/waste, artificial diversion of surface waters, artificial collection, concentration, channeling, and storage of surface waters, failure to provide proper piping and outflow, continuing nuisance, tortious interference with business interests and expectancies, and injunctive relief arise solely under state law and thus are also not subject to the Court's original jurisdiction. 28 U.S.C. § 1331; (*see* Dkt. No. 1-3 at 5–11).

The Court's granting of summary judgment on Plaintiffs' claims for inverse condemnation and for declaratory relief under the CWA eliminates the only causes of action over which the Court has original jurisdiction. 28 U.S.C. §§ 1331, 1441(b); *See supra* Sections C.1., C.2. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7. The Court thus refrains from ruling on the remaining issues raised by Defendant's motion for summary judgment and the various motions to strike declarations filed by the parties, preserving those issues for adjudication in the appropriate state court. (*See generally* Dkt. No. 40; *see* Dkt. Nos. 70 at 11–12, 75 at 2.)

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 40) is GRANTED in part. Plaintiffs' claims for inverse condemnation arising under the Washington and federal constitutions and for declaratory relief under the CWA are DISMISSED. The Court declines to rule on Plaintiffs' state law claims and DIRECTS the Clerk to REMAND this case to

---

7.) Although Plaintiffs do not discuss the SDWA, the Court assumes Plaintiffs intended for their analysis to apply equally to both federal statutes cited in their continuing negligence claim. (*See* Dkt. Nos. 1-3 at 6, 69 at 6–7.)

the Snohomish County Superior Court. The Court further DIRECTS the Clerk to transmit a certified copy of this order to the clerk of the Snohomish County Superior Court.

DATED this 12th day of November 2019.

*John C. Coughenour*
John C. Coughenour
UNITED STATES DISTRICT JUDGE